UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 5, 2015

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | Charges: |
| | : | |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| BRIAN J. OURAND, | : | |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | |
| | : | 18 U.S.C. § 1028A (Aggravated Identity Theft) |
| | : | |
| | : | 22 D.C. Code §§ 3211 and 3212(a) |
| Defendant. | : | (Theft in the First Degree) |
| | : | |
| | : | Forfeiture: 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853(p) |
| | : | |

INDICTMENT

The Grand Jury charges that:

Introduction

At all times relevant to this Indictment:

1.  Defendant BRIAN J. OURAND ("OURAND") was an employee of Company A, a registered financial advisor providing financial services and investment advice, with its principal place of business located in the District of Columbia. Company A is owned by a parent corporation. Company A and its parent corporation are referred to hereinafter, collectively, as

1

Company A. Defendant OURAND began working for Company A in 1986, and later became a vice president and eventually president of the company. Company A terminated defendant OURAND's employment on or about August 16, 2011.

2. Defendant OURAND and Company A provided advisory and financial management services to high net-worth individuals, most of whom were current and former professional athletes. Among the services provided by defendant OURAND and Company A were paying invoices and bills, coordinating tax preparation, and providing estate planning on behalf of individual clients. In that capacity, defendant OURAND managed his clients' personal and business bank accounts and credit cards, among other financial-related services.

3. Among defendant OURAND's individual clients were Client A, Client B, Client C, and Client D (collectively, "the clients"), all of whom were current or former professional athletes. Each of these individuals signed a contract engaging Company A, and by extension defendant OURAND, as a financial advisor who would provide an array of financial services. Pursuant to each contract, the services to be performed by defendant OURAND included, among other responsibilities, making bank deposits and paying monthly bills and other expenditures for each client. As such, defendant OURAND maintained signing authority for the bank accounts maintained by each client. As payment for these services, Client A, Client B, Client C, and Client D each agreed to pay Company A an annual fee due in quarterly installments and ranging in annual amount from $24,000 to $100,000. The contract for Client C also contained a provision that, in addition to the $24,000 annual fee, Client C would pay an investment management fee and a portfolio reporting fee that would be based upon the dollar value of assets managed and monitored by Company A.

4. SunTrust Bank was a financial institution that conducted business throughout the United States, including the District of Columbia. As part of the services provided by defendant OURAND and Company A, defendant OURAND opened accounts at SunTrust Bank on behalf of the clients and maintained authority over their bank accounts to pay bills, transfer money, and deposit checks, as needed and directed by the clients.

### The Scheme to Defraud

5. Beginning at least as early as May 2003, through July 2011, defendant OURAND engaged in a scheme through which he stole, purloined, converted, and embezzled funds belonging to Client A, Client B, Client C, and Client D for his own personal benefit and use. In furtherance of the scheme, defendant OURAND issued checks, initiated wire transfers, and conducted credit and debit card transactions on the accounts of his clients without their authorization to make personal purchases and convert the stolen money for his own personal benefit and use, and the benefit and use of those close to defendant OURAND.

### Purpose of the Scheme to Defraud

6. It was the purpose of the scheme to defraud that defendant OURAND would use his position as financial advisor to the clients and his access to their bank accounts and credit card accounts to obtain money by fraud for defendant OURAND's personal benefit and use.

### Manner and Means

7. Defendant OURAND accomplished the purpose of the fraud scheme by using the following manner and means, among others:

   a. It was part of the scheme to defraud that defendant OURAND opened bank accounts for each of the clients at SunTrust Bank and obtained signature authority to execute transactions on behalf of the clients.

b.  It was a further part of the scheme to defraud that defendant OURAND diverted at least approximately $1,002,390 in total funds from the clients' bank accounts and credit card accounts to himself and for the benefit of those close to him by (a) depositing funds drawn from the clients' bank accounts into defendant OURAND's personal bank account; (b) converting funds drawn from the clients' bank accounts to cash; (c) conducting unauthorized wire transfers and telephone funds transfers from the clients' bank accounts to defendant OURAND's personal bank account and the accounts of individuals close to defendant OURAND; (d) negotiating checks in the names of the clients by using forged and unauthorized signatures of the clients; and (e) conducting unauthorized credit card, debit card, and ATM transactions on the clients' bank and credit card accounts.

c.  It was a further part of the scheme to defraud that defendant OURAND utilized his own personal account through SunTrust Bank to negotiate checks that he paid to himself from the clients' bank accounts and to receive wire transfers and telephone transfers of funds from the clients' bank accounts.

d.  It was a further part of the scheme to defraud that defendant OURAND sought to conceal his embezzlement of client funds for his own purposes by generating false documentation in the files of Company A in support of purported business-related and otherwise authorized expenses concerning the payment of the stolen funds.  For example, defendant OURAND generated numerous "[Company A] Check/Wire Request" forms in which he included a variety of false bases for the payments, such as "personal expenses" for the client, "travel" for defendant OURAND, and "reimbursement" to defendant OURAND.

e.  It was a further part of the scheme to defraud that defendant OURAND misappropriated funds from business accounts owned by the clients.  In an effort to make the

transactions appear legitimate, defendant OURAND noted in the memo line of certain checks that the payments related to purported "consulting fees" and "tax preparation" fees.

f.   It was a further part of the scheme to defraud that defendant OURAND obtained a credit card reflecting the name of defendant OURAND, but the purchases of which would be charged to the Citibank credit card account of Client A.  Defendant OURAND used this credit card to purchase items such as a hotel stay for approximately $2,466 at the Renaissance Hotel in Chicago, Illinois in December 2010, purchases at a tanning salon in Miami, Florida and dry cleaning in Washington, D.C. in January 2011, approximately $500 in dental work in Rockville, Maryland in January 2011, and clothing purchases at Nordstrom Rack as well as hotel charges at the Ritz Carlton in Miami, Florida in April 2011.

g.   It was a further part of the scheme to defraud that defendant OURAND misappropriated funds by making unauthorized use of an American Express account associated with a non-profit foundation formed by Client C.  As he had done with Client A, defendant OURAND procured a credit card issued in defendant OURAND's name on the foundation's American Express account.  Defendant OURAND used the credit card to make numerous unauthorized purchases in the Washington, D.C. metropolitan area, as well as in Miami, Florida and Chicago, Illinois.  The unauthorized charges by defendant OURAND included purchases at Morton's Steakhouse, Cheesecake Factory, Capital Grille, Bloomingdale's, Nordstrom, Best Buy, Victoria's Secret, and Home Depot, among numerous other retailers.  The unauthorized charges also included purchases in May and June 2011 of more than $3,000 at a kitchen and bath supply store in Rockville, Maryland, approximately $1,115 for medical services, and approximately $3,009 to pay private school tuition for a relative of Person A, his girlfriend.

h.   It was a further part of the scheme to defraud that defendant OURAND caused the monthly bills for the Citibank credit card account associated with Client A to be mailed to Company A's office in the District of Columbia, which furthered the ongoing scheme and resulted in the concealment of defendant OURAND's unauthorized purchases.

i.   It was a further part of the scheme to defraud that defendant OURAND deposited checks drawn on a bank account belonging to Client C's non-profit foundation. Defendant OURAND signed the checks as an authorized signatory on the account and made the checks payable in his own name, after which defendant OURAND deposited the checks into his own personal bank account. In an effort to make the transactions appear legitimate, defendant OURAND falsely noted in the memo line of several checks that the payment related to a purported "payment due" and "annual consulting fee."

j.   It was a further part of the scheme to defraud that defendant OURAND used actual events in the lives of the clients as a false basis to support a payment to defendant OURAND. For example, in an effort to make certain transactions from the account of Client B appear legitimate, defendant OURAND falsely noted in the memo line of several checks that the payment related to a purported reimbursement for hospital expenses concerning Client B's young child, who had been treated for fatal injuries relating to a tragic accident in May 2009. Although defendant OURAND had personally covered $5,000 of the hospital bill, defendant OURAND claimed "reimbursement" for approximately $40,000 in checks drawn from Client B's bank account.

k.   It was a further part of the scheme to defraud that defendant OURAND misappropriated the clients' funds for the benefit of others, including Person A, Person B, and Person C. For example, on June 10, 2009, defendant OURAND obtained a cashier's check from

the SunTrust Bank account of Client A in the amount of $10,000 in order to pay the registration fee of Person B to participate in the 2009 World Series of Poker tournament in Las Vegas, Nevada. Similarly, defendant OURAND also used the Citibank credit card of Client C to purchase multiple wire transfers through Western Union for the benefit of Person A and Person B. For example, on March 2 and March 10, 2009, defendant OURAND used Client C's Citibank credit card to purchase two wire transfers through Western Union in the amount of $5,000 each for the benefit of Person B. Defendant OURAND also transferred funds from Client B's SunTrust bank account to Person B's bank account, including wire transfers in the amounts of $4,500 and $3,800 on November 10, 2010, and January 5, 2011, respectively. Person B used the funds to pay defendant OURAND's gambling debts. Similarly, defendant OURAND also used the Citibank credit card of Client A to pay for the gym membership of defendant OURAND and Person C at a health club in Washington, D.C. in January and March 2011.

## COUNTS ONE THROUGH TWO
### (Mail Fraud)

8. Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as if set out in full.

9. On or about each of the dates specified below, in the District of Columbia and elsewhere, defendant BRIAN OURAND, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly and willfully cause to be delivered by the United States Postal Service and by a private and commercial interstate carrier to the office of Company A in the District of Columbia, the mail matter described in each count below, each mailing constituting a separate count:

| COUNT | ON OR ABOUT DATE | MAILING |
|---|---|---|
| ONE | February 17, 2011 | Citibank credit card bill for the account associated with Client A containing unauthorized charges by defendant OURAND. |
| TWO | March 9, 2011 | Letter from R.P.F. & Associates, enclosing $4,900 check issued to Client A, which was subsequently endorsed with forged signature of Client A and deposited into defendant Ourand's SunTrust Bank account. |

**(Mail Fraud, in violation of
Title 18, United States Code, Section 1341)**

**COUNTS THREE THROUGH ELEVEN**
**(Wire Fraud)**

10. Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as if set out in full.

11. On or about each of the dates specified below, in the District of Columbia and elsewhere, defendant BRIAN OURAND, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice to defraud, as described in each count below, each transmission constituting a separate count:

8

| COUNT | ON OR ABOUT DATE | ELECTRONIC WIRE |
|---|---|---|
| **THREE** | December 23, 2010 | Interstate wire communication incident to defendant OURAND causing an unauthorized $2,500 wire transfer to the bank account of a condominium association in Florida from the SunTrust Bank account of Client B in the District of Columbia. |
| **FOUR** | January 5, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $3,800 wire transfer to the bank account of Person B in Indiana from the SunTrust Bank account of Client B in the District of Columbia. |
| **FIVE** | January 19, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $59 purchase on Client A's Citibank credit card account at a hotel health club located in the District of Columbia. |
| **SIX** | January 28, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $259.85 purchase on Client A's Citibank credit card account at the Embassy Suites in the District of Columbia. |
| **SEVEN** | March 18, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $79 purchase on Client A's Citibank credit card account at a hotel health club located in the District of Columbia. |
| **EIGHT** | May 9, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $1,545 purchase on the American Express account associated with Client C's foundation relating to the payment of tuition at a private high school located in the District of Columbia. |

| NINE | June 1, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $5,000 check drawn on Client B's business bank account to be deposited at a bank located in the District of Columbia. |
| TEN | June 23, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $1,464.66 purchase on the American Express account associated with Client C's foundation relating to the payment of tuition at a private high school located in the District of Columbia. |
| ELEVEN | July 11, 2011 | Interstate wire communication incident to defendant OURAND causing an unauthorized $5,000 check drawn on Client D's bank account to be deposited at a bank located in the District of Columbia. |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## COUNTS TWELVE THROUGH THIRTEEN
### (Aggravated Identity Theft)

12.  Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as if set out in full.

13.  On or about each of the dates specified below, in the District of Columbia and elsewhere, defendant BRIAN OURAND did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, as described below for each count, during and in relation to violations of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud), knowing that the means of identification belonged to another actual person:

| COUNT | ON OR ABOUT DATE | INDIVIDUAL | MEANS OF IDENTIFICATION TRANSFERRED, POSSESSED, AND USED |
|---|---|---|---|
| TWELVE | March 9, 2011 | Client A | Name |
| THIRTEEN | July 11, 2011 | Client D | Name |

14. Defendant BRIAN OURAND transferred, possessed, and used the means of identification identified in paragraph 13 above in furtherance of a scheme to defraud, in violation of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud).

**(Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A)**

## COUNTS FOURTEEN THROUGH SEVENTEEN
**(First Degree Theft)**

15. Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as if set out in full.

16. Between on or about each of the dates specified below, in the District of Columbia and elsewhere, defendant BRIAN OURAND wrongfully obtained property of another, to wit, each individual identified below, in a value exceeding $1,000, with the intent to deprive each individual of a right to the property and a benefit of the property and to appropriate the property to his own use, the theft from each individual constituting a separate count:

| COUNT | BETWEEN ON OR ABOUT DATE | THEFT FROM INDIVIDUAL |
|---|---|---|
| FOURTEEN | December 3, 2009 to July 31, 2011 | Client A |
| FIFTEEN | December 3, 2009 to July 31, 2011 | Client B |
| SIXTEEN | December 3, 2009 to July 31, 2011 | Client C |
| SEVENTEEN | December 3, 2009 to July 31, 2011 | Client D |

**(Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211 and 3212(a))**

### FORFEITURE ALLEGATION

1. Upon conviction of any of the offenses alleged in Counts One through Thirteen of the Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the Court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

*[signature]* / by MKA
_____
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA